## THEODORE GRIESS V. STATE OF NEBRASKA.

FILED JUNE 29, 1931. No. 27805.

*Waring & Waring* and *C. L. Stewart,* for plaintiff in error.

*C. A. Sorensen, Attorney General,* and *Irvin Stalmaster,* contra.

Heard before GOSS, C. J., DEAN, GOOD, EBERLY and DAY, JJ.

GOOD, J.

Theodore Griess, hereinafter called defendant, was convicted of the offense of embezzlement and sentenced to imprisonment in the state penitentiary for a term of not less than 20 months, nor more than 24 months. He presents the record of his conviction to this court for review.

This is the second appearance of this cause in this court. A former conviction of defendant was reversed. The opinion is reported in 117 Neb. 719.

It is charged that the court erred in giving certain instructions and in permitting the jury to separate after arriving at a verdict and before it was received by the court.

Defendant asserts that instruction No. 4, given by the court on its own motion, is prejudicially erroneous and is, in substance, similar to an instruction condemned in our former opinion. The contention is not well founded. In our former opinion an instruction was criticized because it was argumentative and withdrew from the jury's consideration material parts of the evidence, including the presumption of innocence. The instruction now under consideration is free from the vices for which the former one was condemned. It is neither argumentative, nor does it withdraw from the consideration of the jury any part of the evidence, or the presumption of innocence to which defendant is entitled.

It appears that at 3:20 p. m. of December 3, 1930, the case was submitted to the jury. At 9:45 a. m., on the following day, December 4, the jury not having reached a verdict, the court, upon its own motion, had them brought into court, and, in the presence of defendant and his counsel, gave an instruction which advised the jury that the case had been carefully tried at considerable expense to the litigants and was submitted to the jury for decision and verdict and not disagreement. It admonished each juror to listen to the arguments of the other jurors with a willingness to be convinced, and, if they differed in their views, such differences in opinion should cause them to examine the evidence more closely and reexamine the grounds of their opinions. It further informed the jury that the main thing to be kept in view was the truth as it appeared in the evidence, examined in the light of the instructions of the court; that the court did not require any juror, in order to reach an agreement, to surrender his honest convictions, based upon consideration of the evidence and the law; that no juror should agree to a verdict which he could not conscientiously approve, but urged upon them the advisability of agreement and the importance of being careful, in the consideration of the case, to avoid mere partisanship, and to give fair consideration to

the conclusions and opinions of fellow jurors. The jury again retired and did not reach a verdict until many hours thereafter. It is urged that this instruction was prejudicial to the defendant, and that it coerced the jury into reaching a verdict of guilty.

We are unable to agree with the contention. Somewhat similar instructions have been criticized by some courts, but, when the criticized instruction is examined, it appears that it went much further than the one in the instant case.

Defendant cites and relies on *People v. Sheldon,* 156 N. Y. 268. It is therein held that the court should never present a personal consideration to the jury which will bear upon their conclusions and that the failure of the jury to agree amounts, in effect, to a confession of incompetency on the part of the jury. No such inference may be drawn from the instruction complained of in this case.

Another case relied on by defendant is *State v. Bybee,* 17 Kan. 462, wherein it is said (p. 466): "Now while a court may properly call the attention of the jury to many matters which increase the desirability of agreement, such as the time already taken, the improbability of securing additional testimony, the general public benefit in a speedy close of a litigation, and, at least in cases where the matters at stake are of minor importance, the question of expense to the parties and the public, yet no juror should be influenced to a verdict by a fear of personal disgrace, or pecuniary injury. No juror should be induced to agree to a verdict by a fear that a failure to so agree would be regarded by the public as reflecting upon either his intelligence, or his integrity."

We find nothing in the instruction complained of that goes to the extent of the instruction in the Kansas case. We think the correct rule is stated in 16 C. J. 1091 in the following language: "Provided nothing is said to coerce an agreement, or to indicate what verdict should be rendered, or that may be considered as an appeal to the jury to decide the case in some way even at the expense of

honest convictions, the court may give the jury further instructions or advice calculated to assist them in coming to an agreement; may call their attention to the time taken in the trial and the great expense incurred therein, or which would be incurred by a retrial; may impress upon them the importance of the case and urge them strongly to come to some agreement; * * * and may direct them to retire for further consideration." In 16 C. J. 961, it is said: "The court properly may admonish the jury as to the propriety and importance of agreeing on a verdict, and may urge them to make every effort to harmonize their views and to agree on a verdict consistent with their consciences, care being taken not to suggest what verdict is proper, nor to give instructions having a tendency to coerce the jury into agreeing on a verdict, or into inviting them to disagree. So also the court may urge as reasons for agreeing on a verdict the time and expense involved in the trial, and the time and expense which a new trial will entail."

As we view the criticized instruction, it was not prejudicial to the defendant and was a proper admonition to the jury to perform their plain duty and reach an agreement from a consideration of all the evidence, if they could conscientiously so do. The giving of the instruction was proper and to be commended.

It appears that after this instruction was given the jury retired; at 1:45 in the afternoon of December 4 they were again called into court; informed that the court was about to recess until the forenoon of the 5th of December, and that, if before that time they arrived at a verdict, they should date and sign it and put it and the instructions of the court in an envelope, seal the same and deliver it into the personal possession of their foreman; that thereupon they would be allowed to separate until 10 o'clock, December 5, when they should return into court with their sealed verdict. It appears that some time before the appointed hour the jury did agree and followed the instruc-

tions of the court, sealing their verdict and the instructions, and placing them in the possession of their foreman, and that the jury returned into court at 10 o'clock, on December 5, when they were polled and the verdict received. It is urged that it was error to permit the jury to separate after reaching a verdict and before returning into court therewith.

The record does not disclose that defendant was in any manner prejudiced by the separation of the jury. There is no statute in this state requiring the jury to be kept together, in custody of an officer, after they have arrived at a verdict and until they return with it into court. At most it is a mere irregularity. It is a well-settled rule in this court that a mere irregularity in procedure in a criminal cause, which does not affect the substantial rights of the defendant, will not cause a reversal of the judgment.

The record appears to be free from prejudicial error. The judgment is

AFFIRMED.