STATE OF NERBASKA, APPELLEE, v. DONALD HENRY DAVIS, APPELLANT.

146 N. W. 2d 220

Filed November 11, 1966.   No. 36201.

Adolph Q. Wolf, Fred J. Montag, Michael McCormack, Bennett G. Hornstein, and Lynn R. Carey, Jr., for appellant.

Clarence A. H. Meyer, Attorney General, and Melvin K. Kammerlohr, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ., and NEWTON, District Judge.

BOSLAUGH, J.

The defendant, Donald Henry Davis, was convicted of murder in the perpetration of a robbery and sentenced to life imprisonment. His motion for new trial was overruled and he has appealed.

The robbery took place at the Sip' N-Chin Bar in Omaha, Nebraska, on August 18, 1964. The record shows that the defendant waited outside the bar in an Oldsmobile automobile owned by his father while Jerome Erving, Jr., Deborah Boston, and Nathaniel Hall entered the bar, committed the robbery, and shot and killed the bartender. After the robbery, Erving and Deborah Boston reentered the Oldsmobile outside the bar and Hall was picked up about a block west of the bar.

After the robbery the police broadcast a description of the Oldsmobile automobile. About 20 minutes later a southbound police cruiser observed it going north on Twenty-sixth Street. While the police cruiser was making a U-turn, the Oldsmobile turned east on a side street where it was abandoned. When found it contained a bottle of whisky that had been taken from the Sip' N-Chin Bar. The defendant was traced through the registration of the automobile. He was arrested at his girl friend's house shortly after 10 p.m. and taken to the police station.

Upon the motion of the State, the defendant's case was consolidated for trial with the cases of Deborah Boston and Jerome Erving, Jr. The first assignment of error relates to the consolidation of the cases for trial and the overruling of the defendant's later motions for severance.

The second assignment of error relates to the procedure which the trial court followed in determining whether the statements made by the defendant should be admitted in evidence. Identical assignments of error were considered in State v. Erving, ante p. 824, 146 N. W. 2d 216, and determined adversely to the contentions of the defendant. For the reasons stated in State

v. Erving, *supra,* we find these two assignments of error to be without merit.

The third assignment of error relates to the admission in evidence of statements which the defendant made after his arrest. The defendant contends that the confessions were involuntary, were the fruit of an unlawful arrest, and that he was denied the right to counsel.

The first statement was made to Pitmon Foxall, a detective sergeant of the Omaha police department. Sergeant Foxall was permitted to testify over objection, after a foundational hearing had been held out of the presence of the jury, that he first talked with the defendant on the morning of August 19, 1964. At that time the defendant did not want to talk to sergeant Foxall so the conversation was brief and not more than 5 or 10 minutes in length. That evening sergeant Foxall again interviewed the defendant and obtained an oral statement as to his participation in the crime. Sergeant Foxall testified that on each occasion he had first advised the defendant of his right not to answer questions, that any statement he made might be used against him, and of his right to have a lawyer.

The second statement was made early the next morning to a deputy county attorney in the presence of a court reporter. The stenographic report of this interview shows that before the defendant was questioned about the crime, he was warned that any statement he made could be used against him and that he had a right to have an attorney. In this statement the defendant again related his participation in the crime.

The defendant first contends that he was threatened with physical violence. This is based upon his testimony that when he was questioned at the police station shortly after the arrest, one of the officers said that he would kick him. His exact testimony at the foundational hearing was: "* * * when we first went down there, I guess we was getting kind of smart, and he said he would kick my young ass, you know." Before the jury the

defendant testified: "When we first got down there, well, I went in this one room with these three colored detectives, and when I was in there this one stud kept asking me questions, and I told him I don't remember. Then he asked me one question, and I don't know if I got smart with him, but he said he was going to kick my young punk ass." The statement, if made, was an unfortunate one. However, it was not such a threat of violence as could reasonably be expected to produce a confession some 24 hours later.

The defendant further testified at the foundational hearing that the same officer had also stated that unless the defendant made a statement, he would be placed in a cell and that " 'We don't care if you rot in there.' " This statement, if made, was also unfortunate. However, it is not the type of statement that could reasonably be expected to provoke a confession that would insure the continued incarceration of the defendant on a felony charge. The incidents to which the defendant testified did not cause the confessions made the following night to be inadmissible.

The defendant further testified that sergeant Foxall had offered to release the defendant's younger brother, who was also in custody, if the defendant would tell them where the gun was, and that the others involved had made complete statements about the crime. This testimony is denied by sergeant Foxall.

The defendant complains that he was not advised that the bartender who was shot during the robbery had died. This circumstance is not of great significance in view of the testimony of sergeant Foxall that he had told the defendant that same morning that the bartender might die.

The most serious question in this case arises because of the age of the defendant and his mental ability. There was evidence that the defendant's family had tried to see him at the police station on August 19, 1964, and had been refused permission. The defendant was 16½

years old, and this was not his first experience with the police. The defendant had been in the Boys' Training School twice and he admitted that he knew the colored detectives.

A clinical psychologist testified that the defendant was below average in intelligence; that he could be classified in the lower 7 percent of the population as to intelligence; that he was immature and tended to act in an impulsive manner; and that he showed evidence of a long-standing personality disturbance.

The defendant testified that he had been in the 10th grade in Technical High School. In his statement to the county attorney the defendant said that he had passed all of his courses the first semester; that he had left school early because he had found a job; and that if he returned to school he would be in the 11th grade.

So far as the legality of the arrest is concerned, the record shows sufficient circumstances to justify the arrest of the defendant in this case. It is unnecessary to consider this contention further.

The record does not show a denial of the right of counsel in this case. Sergeant Foxall testified that the defendant was advised as to his right to counsel and the defendant was similarly advised by the deputy county attorney. Although the defendant testified that he was refused permission to use the telephone, sergeant Foxall testified that he did not ask to use the telephone.

From our examination of the entire record we conclude that the evidence was sufficient to sustain the determination by the trial court and the finding by the jury that the statements of the defendant were voluntary and admissible in evidence.

The judgment of the district court is affirmed.

AFFIRMED.