Alex REIZENSTEIN, Appellant,

v.

Maurice SIGLER, Appellee.

No. 19847.

United States Court of Appeals,
Eighth Circuit.

June 30, 1970.

Robert L. Gilbert, Morrill, Neb., for appellant.

Clarence A. H. Meyer, Atty. Gen., and Harold Mosher, Asst. Atty. Gen., Lincoln, Neb., for appellee.

Before MEHAFFY, HEANEY and BRIGHT, Circuit Judges.

**BRIGHT, Circuit Judge.**

In a habeas corpus proceeding filed in the United States District Court for the District of Nebraska, Alex Reizenstein sought relief from incarceration in the Nebraska state penitentiary under a Nebraska state court sentence of life imprisonment (later commuted to forty-five years) following his conviction for first degree murder entered in 1957. The federal district court (Judge Robert Van Pelt) denied petitioner any relief, and Reizenstein prosecutes this appeal. For reasons stated in this opinion, we reverse and remand.

Reizenstein contends that his statements connecting him with participation in the crime were obtained involuntarily at an in-custody interrogation and that their use by the prosecutor at his state court trial violated federally-guaranteed constitutional rights.

We need to sketch the facts and general background as a basis for our opinion. The Nebraska Supreme Court states the facts in greater detail in its consideration of Reizenstein's direct appeal. Reizenstein v. State, 165 Neb. 865, 87 N.W.2d 560, modified on rehearing, 166 Neb. 450, 89 N.W.2d 265 (1958). Reizenstein's wife was shot on November 30, 1956, during a family quarrel. Police, summoned by a neighbor, took Reizenstein into custody shortly after the shooting. He was interrogated for approximately two hours by local police, sheriff's officers and the assistant county attorney. These questions and Reizenstein's answers were taken down by a court reporter. That evening, Mrs. Reizenstein, though near death, implicated Reizenstein in the shooting.

The state charged Reizenstein with deliberately killing his wife. The defense contended that the shooting occurred accidentally. A jury found the defendant guilty and recommended a life sentence. The Nebraska Supreme Court affirmed the conviction. Reizenstein v. State, *supra*. Reizenstein, thereafter, unsuccessfully sought to annul the conviction through coram nobis and through proceedings authorized under Nebraska's Post-Conviction Act.[1] The sentencing court denied him relief, and the Nebraska Supreme Court again affirmed. State v. Reizenstein, 183 Neb. 376, 160 N.W.2d 208 (1968). Having exhausted his state remedies, Reizenstein filed the instant petition for habeas corpus. The evidence, as stipulated by the parties, consists of the transcripts and exhibits in the original trial and the files compiled in Reizenstein's post-conviction proceedings.

Reizenstein maintains that the Nebraska authorities obtained his incriminatory statements without his volition and through coercion and deceit, citing several reasons, to-wit:

(1) He was intoxicated at the time.[2]

(2) Possessing a moron's level of intellect, he failed to comprehend the investigation.[3]

(3) His questioners intimidated and deceived him.[4]

---

1. See generally Nebraska Revised Statute § 29-3001 et seq. (R.S.Supp.1967).

2. See Logner v. North Carolina, 260 F. Supp. 970 (N.C.1966), aff'd, 392 F.2d 222 (4th Cir.), cert. denied, 393 U.S. 857, 89 S.Ct. 110, 21 L.Ed.2d 126 (1968). Testimonial descriptions of Reizenstein's level of intoxication varied from "drunk", "drunken daze", to "a little incoherent" and not intoxicated.

3. See Davis v. North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966). See also Culombe v. Connecticut, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed. 2d 1037 (1961); Blackburn v. Alabama, 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960); Payne v. Arkansas, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958). Psychiatric testimony established Reizenstein's intellectual capacity as "middle grade moron" and mildly retarded. Further, his formal educational experience had terminated at the age of fourteen after progression through the third grade.

4. Reizenstein was questioned by a number of persons, including police officers, the local sheriff and the assistant county attorney who eventually prosecuted the case against him. Reizenstein was advised by the sheriff several times during

(4) Law enforcement officers participating in the questioning, failed to advise Reizenstein of his basic constitutional right to remain silent or that his statements could be used against him.[5]

(5) Police officers testified at the trial to a false or misleading version of Reizenstein's in-custody statements.[6]

Since we focus on the use made by the prosecutor of petitioner's statements, we particularly examine the circumstances surrounding their introduction into evidence. The prosecutor introduced Reizenstein's statements through witness Shipley, the assistant chief of police of Scotts Bluff, Nebraska. Shipley recapitulated the shooting incident by specifically mentioning that Reizenstein admitted obtaining the weapon used in the shooting from a back bedroom, loading the gun and, thereafter scuffling with his wife over the weapon. Shipley further testified that Reizenstein offered two versions of how the gun fired—first, that Mrs. Reizenstein grabbed the gun and pulled the trigger; later, that Reizenstein did not know how the gun went off. Shipley included additional comments of Reizenstein: for example, that Reizenstein said he did not intend to kill his wife, but intended to commit suicide and that Reizenstein stated he had been drinking liquor prior to the altercation.[7] Shipley further stated his conclusion that Reizenstein had spoken voluntarily—without promise or threat.

Reizenstein's counsel objected on several grounds, including insufficiency of foundation to show that the statements had been given voluntarily and that the "best evidence" was not being offered. The trial court overruled all objections repetitively made and, at the close of the evidence, instructed the jury in accordance with the defendant's request:

\* \* \* that the State, having introduced the admissions and declarations made by the defendant Alex Reizenstein, the truth of any exculpatory or mitigating facts embraced in the declarations or admissions so introduced would be presumed, unless their falsity was shown by the evidence in the case.

the course of the interrogation that there was "a hard way and an easy way" to get along with the police, the possible reference being to an earlier incident when Mrs. Reizenstein summoned police to the family residence to settle a quarrel and the officers beat Reizenstein into submission. A reading of Reizenstein's statement indicates that during his interrogation he thought that one of those officers was present in the room. In addition, the interrogating officers called Reizenstein's manhood into question, accused him of hiding behind his young son, and intimated that the child had furnished a statement incriminating the petitioner.

5. See *Davis, supra,* fn. 3; Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966); Haynes v. Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963); *Culombe, supra,* fn. 3. Here, no attempt was made to apprise Reizenstein of his fundamental constitutional rights. Under present day standards, this fact could render the statement inadmissible. See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Cf. Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964).

6. At the trial, the prosecutor refused to produce a transcript of Reizenstein's in-custody statement on ground that such transcript constituted "work product". The state presented a paraphrased version of the text through testimony of police officers who had been present at the interrogation. Appellant claims these procedures by the prosecutor prejudiced his constitutional rights by intentionally presenting to the court a false version of the interview with Reizenstein. See and compare Miller v. Pate, 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690 (1967); Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); Pyle v. Kansas, 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214 (1942); Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935); Cook v. Wainwright, 402 F.2d 294 (5th Cir. 1968); Cobb v. Hunter, 167 F.2d 888 (10th Cir.), cert. denied, 335 U.S. 832, 69 S.Ct. 19, 93 L.Ed. 385 (1948); Tilghman v. Hunter, 167 F.2d 661. (10th Cir. 1948).

7. Other persons present at the interrogation corroborated, to some degree, Shipley's version of Reizenstein's testimony.

The court gave no further special instruction concerning Reizenstein's remarks which might be considered inculpatory.

On direct appeal, the Nebraska Supreme Court considered the admissibility of the respective versions of Reizenstein's admissions as testified to by several witnesses and the prosecution's refusal to produce the transcript of this interrogation and held those questions to rest within the discretion of the trial court. Reizenstein v. State, *supra*, 87 N.W.2d at 565. Later, the Nebraska trial court, in considering Reizenstein's application for coram nobis and post-conviction relief, found the evidence submitted insufficient to show " * * * a violation of the defendant's rights or improper procedure on the part of either the trial or appellate courts in previous actions and proceedings * * *." On appeal, the Nebraska Supreme Court (two judges dissenting) affirmed this post-conviction action of the trial court, holding:

(1) The petitioner had failed to sustain the burden of proving his statements were involuntary;

(2) The trial court complied with the dictates of Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), since in denying the defendant's prayer for post-conviction relief it " * * necessarily found that the statements were voluntary"; and

(3) Petitioner could not now complain about the failure of the trial court to submit the issue of the voluntariness of his confession to the jury. State v. Reizenstein, *supra*, 160 N.W.2d 208.

▇▇▇ The United States district court considered identical issues. Judge Van Pelt recognized that the Nebraska courts may have misapplied federal constitutional standards as enunciated in *Jackson, supra*, in requiring the defendant Reizenstein to sustain the burden of proving that his confession had been involuntarily obtained. He reconsidered this voluntariness question and independently determined that Reizenstein

voluntarily and rationally submitted to the in-custody questioning by Nebraska law enforcement officers. Judge Van Pelt's determination, however, predated the Supreme Court decision in Sigler v. Parker, 396 U.S. 482, 90 S.Ct. 667, 24 L.Ed.2d 672 (1970), reversing per curiam (three justices dissenting) the Eighth Circuit's decision in Parker v. Sigler, 413 F.2d 459 (1969). The Supreme Court held a panel of this court to be in error in initially passing independent judgment on the voluntariness of a confession used to obtain a conviction in a state court. The appropriate remedy when a federal court finds a Jackson v. Denno error in a prior state proceeding is to allow the state a reasonable time to make an error-free determination on the voluntariness of the confession at issue. Sigler v. Parker, *supra*, 396 U.S. at 484, 90 S.Ct. 667.

Reizenstein's admissions as related by witness Shipley constitute a confession. Ashcraft v. Tennessee, 327 U.S. 274, 66 S.Ct. 544, 90 L.Ed. 667 (1946) (narration by witness of defendant's statement constitutes a confession equal with that of a court reporter's transcribed statement). Marked similarities appear between the posture of this case and Parker v. Sigler, *supra*. Both defendants had been convicted of murder in the Nebraska courts and, after exhaustion of state remedies, filed habeas corpus proceedings in the federal courts. Parker urged, as does this petitioner that his confession had been introduced into evidence at his murder trial in violation of his constitutional rights. In *Parker*, the federal district court denied the writ. Finding coercion, we reversed. In this appeal, Reizenstein invites a similar conclusion, which, in the light of Sigler v. Parker, *supra*, would constitute error.

▇▇▇ We perceive our duty to initially determine whether Reizenstein's confession and its introduction into evidence conform to the constitutional mandates of *Jackson, supra*, and its later progeny of Boles v. Stevenson, 379 U.S. 43, 85 S.Ct. 174, 13 L.Ed.2d 109 (1964); Sims v. Georgia (I), 385 U.S. 538, 87 S.Ct.

639, 17 L.Ed.2d 593 (1967); Pinto v. Pierce, 389 U.S. 31, 88 S.Ct. 192, 19 L.Ed.2d 31 (1967); Sims v. Georgia (II), 389 U.S. 404, 88 S.Ct. 523, 19 L.Ed. 2d 634 (1967) and of course, Sigler v. Parker, *supra*.[8]

*Jackson* outlines the due process policy of the Fourteenth Amendment as forbidding the use of involuntary confessions:

> \* \* \* not only because of the probable unreliability of confessions that are obtained in a manner deemed coercive, but also because of the "strongly felt attitude of our society that important human values are sacrificed where an agency of the government, in the course of securing a conviction, wrings a confession out of an accused against his will," \* \* \* 378 U.S. at 385–386, 84 S.Ct. at 1785.

 When a defendant objects to the admission of his confession, he becomes " \* \* \* entitled to a fair hearing in which both the underlying factual issues and the voluntariness of his confession are actually and reliably determined." *Jackson, supra,* 378 U.S. at 380, 84 S.Ct. at 1783. State procedures must be "fully adequate to insure a reliable and clearcut determination. \* \* " *Jackson, supra,* 378 U.S. at 391, 84 S.Ct. at 1788. In *Sims* (I), *supra,* the Supreme Court, in explanation of its *Jackson* holding, specifies that a jury may not hear a confession until the trial judge has determined that it has been freely and voluntarily given by the defendant and "[a]lthough the judge need not make formal findings of fact or write an opinion, his conclusion that the confession is voluntary must appear from the record with unmistakable clarity." 385 U.S. at 544, 87 S.Ct. at 643, *Boles, supra,* comments that

> \* \* \* where a state defendant has not been given an adequate hearing upon the voluntariness of his confes-

sion, he is entitled to a hearing in the state courts under appropriate procedures and standards designed to insure a full and adequate resolution of this issue. 379 U.S. at 45, 85 S.Ct. at 176.

 Our review of the transcript of Reizenstein's trial convinces us that the comments of Chief Judge Van Oosterhout in Parker v. Sigler, *supra,* 413 F.2d at 462, are apposite here:

> The record in the case before us shows that the convicting court made no reliable determination of the voluntariness issue before admitting the confession in evidence. All that appears in the record is a bald statement overruling defendant's apropriate objection to the admission of the written signed confession. No finding or basis for such ruling is stated.

The United States Supreme Court indicated its agreement with these comments:

> \* \* \* [T]he record of proceedings in the trial court and the opinion of the Nebraska Supreme Court affirming respondent's conviction do not justify a conclusion that the trial judge made his own determination of voluntariness as required by Jackson v. Denno, *supra.* Sigler v. Parker, *supra,* 396 U.S. at 483, 90 S.Ct. at 668.

Accordingly, we conclude that the State of Nebraska, in prosecuting Reizenstein, failed to comply with the constitutional prerequisites of *Jackson, supra,* and later Supreme Court cases.

The voluntariness of a confession may be determined subsequent to a trial in "a soundly conducted collateral proceeding." *Jackson, supra,* 378 U.S. at 395, 84 S.Ct. at 1791. Since the Nebraska courts afforded petitioner post-conviction hearings, we also test them by these same constitutional standards.

 As noted by Judge Van Pelt, the Nebraska courts apply one rule in deter-

---

8. The Jackson v. Denno principles operate retrospectively and apply to Reizenstein's situation. Desist v. United States, 394 U.S. 244, 250, n. 15, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969); Parker v. Sigler, *supra,* 413 F.2d at 462; State of Minnesota ex rel. Holscher v. Tahash, 364 F.2d 922, 926 (8th Cir. 1966).

mining voluntariness when the confession is offered during the trial—the state bears the burden of proof (State v. Breaker, 178 Neb. 887, 136 N.W.2d 161 (1965)) and another in post-conviction proceedings—the petitioner bears that burden (State v. Reizenstein, *supra,* 160 N.W.2d at 209, 210). Constitutional standards require the state to assume the same evidentiary burden in a post-conviction as in a pre-conviction Jackson v. Denno hearing. *Jackson, supra; Sims* (II), *supra,* 389 U.S. at 406, 88 S.Ct. 523; Arrington v. Maxwell, 409 F.2d 849, 851 (6th Cir.), cert. denied, 396 U.S. 944, 90 S.Ct. 381, 24 L.Ed.2d 245 (1969); Pea v. United States, 130 U.S.App.D.C. 66, 397 F.2d 627 (1967) (en banc); compare Clifton v. United States, 125 U.S.App.D.C. 257, 371 F.2d 354 (1966), cert. denied, 386 U.S. 995, 87 S.Ct. 1312, 18 L.Ed.2d 341 (1967); see United States v. Inman, 352 F.2d 954 (4th Cir. 1965); Harrold v. Territory of Oklahoma, 169 F. 47, 53 (8th Cir. 1909).

In considering Reizenstein's confession, the Nebraska courts failed to follow the standards enunciated in *Jackson* in another regard as well. As we have earlier noted, the Nebraska post-conviction trial court found Reizenstein's showing insufficient to establish use of improper procedures or any violation of his rights. The Nebraska Supreme Court, in review, characterized the action of the trial judge in admitting the Reizenstein statements as comprising "a judicial finding of voluntariness" and the further action of the sentencing court in denying post-conviction relief as also "necessarily" finding them voluntary. State v. Reizenstein, *supra,* 160 N.W.2d at 211. No such express finding has ever been made by a Nebraska fact-finding court.

We rejected a similar Nebraska finding of voluntariness as resting upon an inadequate basis in Parker v. Sigler, *supra.* We there said:

Neither the trial court nor the Supreme Court made any finding on the voluntariness issue that meets the un-

mistakable clarity requirement set by the Supreme Court.

\* \* \* \* \* \*

As hereinabove pointed out, all [Nebraska] courts considering the pertinent issue before us have based their decisions principally upon the invalid premise that the convicting court made the foundation finding required by Jackson v. Denno, 413 F.2d at 463.

The Supreme Court approved this resolution:

[W]e accept the Court of Appeals' determination that all subsequent findings of voluntariness were made at least in part in reliance on the first, procedurally defective, determination of the admissibility of the confessions. Sigler v. Parker, *supra,* 396 U.S. at 483–484, 90 S.Ct. at 668.

Finally, on the issue of the voluntariness of Reizenstein's statement, we comment upon the relationship between the use of a narrative statement as admissions of Reizenstein rather than utilizing an accurate transcript of his interrogation. In reading officer Shipley's barebones testimonial compilation of the interrogation session, we gain the impression of Reizenstein as a person who changed his story under questioning and who exhibited little concern for a wife who then lay mortally wounded.

A reading of the whole transcript of the interrogation gives a somewhat different impression of Reizenstein. He appears as an unschooled and emotionally-distraught person who, under intense, repetitive and forceful questioning, protests love for his wife and grief for the injury which she has sustained, who maintains consistently though with differing articulation, that he possessed no intent to harm his wife, but harbored thoughts of suicide, and who insists that the shooting occurred accidentally.

■ Reizenstein's statements, as submitted at his trial, must be evaluated upon the usual constitutional standards of voluntariness. Inconsistencies and variances in an accused's statements as

taken from him by law enforcement officers as compared to its content and context as presented to a jury may be so great that the accused's statement, as presented, can no longer be deemed his own. See *Clewis v. Texas*, 386 U.S. 707, 712 n. 8, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967). A fortiori, an altered statement may be an involuntary one. As we see it, the issue is not whether the witness or the prosecutor possessed improper motives in offering an accused's statements through the testimony of one who witnessed the interrogation rather than producing the written record of the questions and the accused's answers to them, but whether the statement as offered to the jury represents the product of a "rational intellect and a free will." See *Townsend v. Sain*, 372 U.S. 293, 307, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); *Reck v. Pate*, 367 U.S. 433, 81 S.Ct. 1541, 6 L.Ed.2d 948 (1961); *Blackburn v. Alabama, supra,* 361 U.S. at 208, 80 S.Ct. 274, 4 L.Ed.2d 242. The fact finder must determine whether officer Shipley, in testifying, served properly as a neutral conduit or improperly as a transformer in relating Reizenstein's story.

The federal district court deemed the variances insignificant between the transcript-version and the Shipley-version of the homicide and regarded any error flowing therefrom to be harmless under the doctrine of *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d

284 (1969) and *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

We reject the application of the harmless error doctrine to this facet of the case. If Reizenstein's expurgated statements, as related to the jury by Shipley, failed to represent his voluntary statement, we cannot say that an unexpurgated version of the interrogation would not have altered the jury's view, at least upon the degree of Reizenstein's culpability for the death of his wife.[9] The Supreme Court has generally rejected the argument that the "introduction of an involuntary confession is immaterial where other evidence establishes guilt or corroborates the confession." *Blackburn v. Alabama, supra,* 361 U.S. at 206, 80 S.Ct. at 280, and cases cited therein.

We leave the resolution of these difficult issues [10] to the Nebraska courts under the Supreme Court's admonition of *Sigler v. Parker, supra.* We vacate the order of the United States district court and remand this case with instructions to grant the State of Nebraska a reasonable time to afford the petitioner an appropriate hearing in the state court on the issue of the voluntariness of his statements introduced as evidence in his trial or, in the alternative, a new trial. If the State of Nebraska should not follow this course, petitioner is entitled to his release.[11]

---

9. At Reizenstein's trial, the jury received instructions upon first and second degree murder and manslaughter.

10. "Expanded concepts of fairness in obtaining confessions have been accompanied by a correspondingly greater complexity in determining whether an accused's will has been overborne—facts are frequently disputed, questions of credibility are often crucial, and inferences to be drawn from established facts are often determinative. The overall determination of the voluntariness of a confession has thus become an exceedingly sensitive task, one that

requires facing the issue squarely, in illuminating isolation and unbeclouded by other issues and the effect of extraneous but prejudicial evidence." *Jackson, supra,* 378 U.S. at 390, 84 S.Ct. at 1788.

11. On remand, we granted similar relief in *Parker v. Sigler, supra.* See *Boles, supra,* 379 U.S. 43, 85 S.Ct. 174; *Ellis v. Fitzharris*, 407 F.2d 799 (9th Cir. 1969); *State of Minnesota ex rel. Holscher v. Tahash, supra,* 364 F.2d 922; *Mitchell v. Stephens*, 353 F.2d 129 (8th Cir. 1965), cert. denied, 384 U.S. 1019, 86 S.Ct. 1966, 16 L.Ed.2d 1042 (1966).